**DOMINION BANK, N.A., Appellant,**

v.

**Wilson Lee OSBORNE, and Minnie Dawn Osborne, Appellees.**

Civ. A. No. 93–0117–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

March 9, 1994.

184

James E. Green, Bristol, VA, for appellant.

John M. Lamie, Abingdon, VA, for appellees.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This case is before the Court on creditor's, Dominion Bank ("Dominion"), appeal from a decision of the Bankruptcy Court avoiding Dominion's lien, in its entirety, on debtor's home and other real property, 156 B.R. 188. Because this Court reads the relevant statute and Fourth Circuit law as demanding a contrary result, the decision of the Bankruptcy Court is reversed.

## FACTS

In November 1990, Dominion reduced to judgement certain debts owed to it by the appellees, Wilson Lee and Minnie Dawn Osborne ("Debtors"). This judgement was subsequently docketed in the Clerk's office for the Circuit Court of Bristol, Virginia, thereby creating a judgement lien [1] against all property held by either of the Debtors in the City of Bristol, Virginia.[2]

The Osbornes filed for relief from their debts under Chapter 11 of the United State Bankruptcy Code on January 18, 1991. This proceeding was converted to a Chapter 7 proceeding on January 8, 1992. Shortly after converting to a Chapter 7 bankruptcy, the Debtors recorded homestead deeds with the Circuit Court Clerk for the City of Bristol, Virginia, on February 12, 1992. These deeds claimed exemptions in the Debtors' residence [3] ("Residence") located at 527 Ventura Drive, Bristol, Virginia.

Debtors filed a motion to avoid Dominion's judgement lien in September 1992. Debtors argued the judgement lien impaired the homestead exemption claimed on their residence. On the basis of a written stipulation of facts, the Bankruptcy Court avoided Dominion's judgement lien in its entirety [4] under 11 U.S.C.A. § 522(f)(1) as an impairment of the Debtors' homestead exemption. Dominion now appeals that decision to this Court.

## ANALYSIS

■ This Court has jurisdiction to hear this bankruptcy appeal under 28 U.S.C.A. § 158(a) (West 1993). In reviewing Bankruptcy Court rulings, district courts review statutory constructions *de novo*. *Hargrove v. Edwards Co.*, 133 B.R. 765, 766 (E.D.Va. 1991) (*citing In re Newman*, 903 F.2d 1150, 1152 (7th Cir.1990)); *see also Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987). The interpretation of 11 U.S.C.A. § 522(f)(1) is a question of law, and it will therefore be reviewed by this Court *de novo*.

■ The first step in any case of statutory interpretation is to look to the text of the statute to determine whether its meaning can be discerned from the words alone. Where the language is clear and the purpose of the statute is evident from its wording, the court cannot circumvent the ordinary meaning of the plain language by mining for some nebulous "congressional intent" in the legislative history. *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 173, 98 S.Ct. 2279, 2291, 57 L.Ed.2d 117 (1978); *see United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *In re Opperman*, 943 F.2d 441, 444 (4th Cir.1991); *accord* Peter H. Carroll, III, *Literalism: The United States Supreme Court's Methodology for Statutory Construction in Bankruptcy Cases*, 25 St. Mary's L.J. 143 (1993). Where, as in this case, the statutory language is clear, the court must give effect to those words.

---

1. The amount of the judgement lien is in excess of $100,000.

2. In addition to the Osbornes' Ventura Drive residence there is mention in the record of "other [real] property" owned by the Debtors.

3. The value of the debtor's residence is $50,000. Twin City Federal Savings Bank holds a first lien on the residence in the amount of $46,400, leaving the debtors with $3,600 in equity.

4. The lien was avoided not only as to the home on Ventura Drive but also as to any other real property held by the debtors in the City of Bristol, Virginia.

■ The statute which this Court must interpret is 11 U.S.C.A. § 522(f). This provision was enacted as part of the United State Bankruptcy Code ("Code") 11 U.S.C.A. § 101 in 1978. 11 U.S.C.A. § 522(f) is titled "Exemptions" and reads in relevant part:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (1) a judicial lien;

The reference to subsection (b) in § 522 refers to the exemptions which are allowed in the Code.[5] While § 522(d) lists the exemptions available to a debtor under federal law, it is not the source of the homestead exemption claimed by the Debtors. 11 U.S.C.A. § 522(b)(2)(A), referred to as the "opt out" provision, allows states the option of enacting their own exemption schemes and displacing the federal scheme. Virginia has "opted out" of the federal scheme, accordingly its statutory exemptions govern the debtor's bankruptcy case. Va.Code Ann. § 34–3.1 (Michie 1990).

The primary exemption under the Virginia scheme is the homestead exemption, entitling "[e]very householder ... to hold exempt from creditor process arising out of a debt, real and personal property, or either to be selected by the householder, including money and debts due to the householder not exceeding $5,000 in value." Va.Code Ann. § 34–4 (Michie 1990). This statute has been read to allow both husband and wife to take a $5,000 "homestead exemption" where both husband and wife are debtors in bankruptcy. *Cheeseman v. Nachman*, 656 F.2d 60, 64 (4th Cir. 1981).

In the present case the Debtors have each elected to exercise their $5,000 exemption right against their home on Ventura Drive. As a result of these elections, the Debtors have a total homestead exemption of $10,000. The question for this Court is to what extent does Dominion's judgment lien "impair" the Osbornes' homestead exemption. If the lien completely impairs the exemption, the lien must be avoided in its entirety. If, on the other hand, the lien only impairs the exemption to the extent of the amount claimed (*i.e.* $10,000) then the remainder of the lien above this amount must be allowed to stand. Whether a particular exemption is impaired constitutes a bankruptcy question which must be resolved with reference to federal law. *In re Chabot*, 992 F.2d 891, 894 (9th Cir.1993) (*citing In re Kruger*, 77 B.R. 785, 786 (Bankr.C.D.Cal.1987)).

The language used in § 522(f) leaves little to the imagination. The statute clearly states that "the debtor may avoid the fixing of a lien on an interest of the debtor in property *to the extent* that such lien impairs an exemption...." (Emphasis added). "To the extent" is language which clearly limits the specific avoidance power granted by § 522(f). It limits the avoidance power to that part of the lien which "impairs" the exemption. In this case, Dominion's judgment lien impairs the Debtors' homestead exemption to the extent of $10,000, the amount of the exemption they have claimed in their home on Ventura Drive. Thus under the language of § 522(f), the Debtors may avoid $10,000 as it constitutes that portion of Dominion's lien which so impairs their exemption. The remainder of Dominion's lien remains unaffected.

The Debtors claim that if a portion of the lien is allowed to remain the Debtors will be denied the "fresh start" which the Bankruptcy Code was intended to provide. *In re Galvan*, 110 B.R. 446, 451 (Bankr. 9th Cir. 1990). While this Court agrees that a "fresh start" is an important part of bankruptcy, the nebulous "fresh start" concept should not be

---

**5.** The subsection reads in relevant part:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal Law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition.... 11 U.S.C.A. § 522(b).

allowed to overwhelm specific code provisions such as § 522(f). In fact, the "fresh start" argument misses the point entirely. Failure to avoid the lien in no way prevents the Debtor from receiving a "fresh start" since the discharge from bankruptcy will discharge the Debtor from any further personal liability for the judgement. Simply put, the failure to avoid Dominion's judgment lien allows Dominion to receive their portion of Debtors' assets, subject to the homestead exemption and the priority of other liens.[6]

The Supreme Court in *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) announced a holding consistent with the position that a "creditor's lien stays with the real property until foreclosure." *Id.* —— U.S. at ——, 112 S.Ct. at 778. Although the Court in *Dewsnup* was considering 11 U.S.C.A. § 506(d), the issue was still lien avoidance. The petitioners in *Dewsnup* argued that "the creditor would lose the benefit of any increase in the value of the property by the time of the foreclosure sale and any increase would accrue to the benefit of the debtor, ..." *Id.* The Court disagreed, reasoning that "[a]ny increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor...." *Id.*[7] Likewise, the amount of Dominion's judicial lien not avoided under § 522(f)(1) does not prevent Debtor from exercising their homestead exemption, nor does it deny them a fresh start.

The position announced by this Court enjoys support in a wide range of cases throughout the Circuits. Most importantly, the Fourth Circuit in *In re Opperman*, 943 F.2d 441 (4th Cir.1991) announced, in strongly worded *dicta*, that "[a] lien larger in amount than the exemption available to the debtor does not impair that exemption." *Id.* at 444. In *Opperman* the court was faced with a North Carolina statute which interfered with the operation of § 522(f). The *Opperman* court held that, in light of the Supreme Court's ruling in *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), a lien must be avoided if it impairs the debtor's exemption. 943 F.2d at 443. The court then went on to say that there was a matter which needed clarification. The matter at issue was the extent to which a lien would be avoided under § 522(f)(1). The court concluded that "only that part of the lien which *actually* interferes with the debtors homestead exemption may be avoided. Under the North Carolina exemption scheme, this would allow all or a portion of a lien up to $7,500 in amount to be avoided.[8]" *Id.* at 444 (emphasis added). While this language may be *dicta*, this Court considers it extremely persuasive given the *Opperman* court's *sua sponte* resolution of an issue not raised in the appeal before it. Because of the persuasive nature of the *dicta*, this Court adopts the language of *Opperman* as controlling in the Osbornes' case.

*In re Opperman* is not the only case which addresses the point now before this Court. Courts in virtually every circuit have reached conclusions in line with the reasoning of this Court. Most notable among these decisions is *In re Chabot*, 992 F.2d 891 (9th Cir.1993).

**6.** In this case it is doubtful that Dominion will receive anything from the Debtor's estate. Nevertheless, this fact does not change this Court's analysis under § 522(f)(1).

**7.** In *In re Cerniglia*, 137 B.R. 722 (Bankr.S.D.Ill. 1992), the Bankruptcy Court applied *Dewsnup* to a situation similar to the facts in the present case stating:

Applying the principles enunciated in *Dewsnup*, it is clear that a judicial lien may not be avoided under § 522(f)(1) merely because the lien is unsecured and remains as a charge against the property. Section 522(f)(1) gives the debtor only a limited power to avoid liens in order to preserve his exemption. This power may not be expanded to allow avoidance of the unsecured portion of the lien that would

otherwise survive the debtor's discharge. To so interpret § 522(f)(1) would be to grant the debtor not merely the benefit of his exemption but also all the benefits of ownership beyond the exemption amount.... The continued existence of the unsecured or excess portion of the lien on property in which the homestead exemption is claimed, while constituting a cloud on title, does not thereby impair the debtor's exemptions or even his fresh start. 137 B.R. at 725.

**8.** Virginia's homestead exemption, is $5,000. This $2,500 difference is the only significant variance between Virginia's homestead exemption, Va.Code Ann. § 34–4 and North Carolina's homestead exemption N.C.Gen.Stat. § 1C–1601(a)(1).

In *Chabot*, the Ninth Circuit was faced with a number of bankruptcy issues, only one of which is relevant to this Court's analysis. The facts in *Chabot* as relevant to this decision are that the debtors filed a motion under § 522(f) to have a judgment lien against their home avoided as an impairment of their homestead exemption. The debtors argued that unless the entire lien was avoided, the unsecured portion would remain after discharge from bankruptcy and deny them a "fresh start." *Id.* at 894. The court rejected this argument in favor of a plain reading of the "to the extent that" language in § 522(f). The *Chabot* court held that the "lien [had] no impact on the Chabot's ability to recover their ... homestead exemption. Therefore, it is not impaired and cannot be avoided." *Id.* at 895. The court went on to reinforce its holding by stating that "the debtors need not receive post-petition appreciation in their property to be afforded a fresh start."[9] *Id.*

*In re Chabot* is the most recent decision, in a long line of cases reaching back eleven years, which lend support to this Court's holding. *See, e.g., In re Sanders*, 156 B.R. 667 (D.Utah 1993); *In re Henderson*, 155 B.R. 157 (Bankr.W.D.Tex.1992); *In re D'Amelio*, 142 B.R. 8 (Bankr.D.Mass.1992); *In re Prestegaard*, 139 B.R. 117 (Bankr. S.D.N.Y.1992); *In re Cerniglia*, 137 B.R. 722 (Bankr.S.D.Ill.1992); *In re Sanglier*, 124 B.R. 511 (Bankr.E.D.Mich.1991); *In re D'Ambrosia*, 61 B.R. 588 (Bankr.N.D.Ill. 1986); *In re Breaux*, 55 B.R. 613 (Bankr. M.D.Ala.1985); *In re Fitzgerald*, 29 B.R. 41

(Bankr.E.D.Va.1983) *vacated and remanded on other grounds*, 729 F.2d 306 (4th Cir.1984) (judgment lien is avoided only to the extent it impairs the exemption, while the remaining amount survives); 3 *Collier on Bankruptcy* ¶ 522.29[1] at 522–90 (15th ed. 1991); *see also In re Zuaro*, 29 B.R. 37 (Bankr.E.D.N.Y. 1983) (judgment lien could not be avoided as impairing homestead exemption). *But cf., In re Galvan*, 110 B.R. 446 (9th Cir.1990) (unsecured portion of a judicial lien is properly avoided as an impairment on an exemption); *In re Braddon*, 57 B.R. 677 (Bankr.W.D.N.Y. 1986) (judgment liens which exceed the value of the exempted property plus the value of the exemption are avoided in their entirety); *Norton Bankruptcy and Law Practice 2d* § 46:23 (1994).

Finally, despite the fact that both Dominion and the Debtors rely so heavily on the recent Supreme Court decision in *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), this Court does not view that case as controlling in this situation. Further, this Court is of the opinion that the decision reached today is not at variance with any of the lien avoidance language in *Owen*.[10]

In light of the clear language of 11 U.S.C. § 522(f)(1), the persuasive *dicta* used by the Fourth Circuit in *Opperman*, and the overwhelming amount of supportive case law on the subject, this Court holds that Dominion's lien is avoided "to the extent" that it impairs the debtor's homestead exemption. This impairment is equal to the $10,000 of the joint

---

**9.** This holding undermines the decision in *In re Galvan*, 110 B.R. 446 (9th Cir.1990), which is relied upon heavily by the Debtor.

**10.** In *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) the Supreme Court dealt with § 522(f) in another context. In *Owen*, the court allowed a debtor to avoid a lien because the lien prevented the debtor from claiming the underlying property as exempt property. 500 U.S. at 311–314, 111 S.Ct. at 1837–38. The parties, Dwight and Helen Owen, were husband and wife. Helen Owen obtained a judgement against her husband in the amount of $160,000. She perfected a judgment lien against Dwight Owen while his condominium was not considered a homestead under Florida law. Nonetheless, Dwight Owen filed suit in bankruptcy in 1986 to avoid Helen Owen's lien. The Supreme Court ruled that Helen Owen's lien impaired

Dwight Owen's homestead exemption, even though Dwight Owen's condominium was not exempt under Florida law from execution by Helen Owen. *Id.*

The Court reasoned that Dwight Owen's home would be exempt property under Florida law but for the fact that Helen Owen had perfected her lien. 500 U.S. at 311, 111 S.Ct. at 1837. Therefore, under 11 U.S.C.A. § 522(f)(1), the lien impaired an exemption to which the debtor "would have been entitled" had the lien not existed and Dwight Owen could avoid the lien. *Id.*

This decision dealt specifically with the treatment of an exemption under state versus federal law. The focus of the *Owen* Court's analysis centered on the phrase "would have been entitled" which has little bearing on the issue before this Court which centers on the phrase "to the extent." Clearly, *Owen* is distinguishable from the case before the Court today.

**188**

homestead exemption held by the Debtors in their Ventura Drive home. The amount of Dominion's lien above this $10,000 is not avoided and must be reinstated against all of the Osbornes' real property located in the City of Bristol, Virginia.

## CONCLUSION

The Bankruptcy Code of 1978 does not normally lend itself to a plain language approach to statutory analysis. In the rare situation where the Court does not have to dig for a statute's meaning in the deep mines of legislative history, the result is more likely to be the real gold of judicial reasoning rather than the pyrite of false interpretation. This case is one of those rare cases,, and pursuant to the reasoning announced above, the decision of the Bankruptcy Court is reversed. The case is remanded with orders to reinstate the lien in a manner consistent with this opinion.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record and strike this case from the docket.

## ORDER

For the reasons announced in the Memorandum Opinion entered this day it is hereby

## ADJUDGED AND ORDERED

The decision of the Bankruptcy Court is **REVERSED.** It is further ordered that this matter be **REMANDED** to the Bankruptcy Court for reinstatement of Dominion's judicial lien against the property of the Osbornes in the City of Bristol, Virginia in a manner consistent with this opinion.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record and strike this case from the docket.